289 So.2d 850 (1974)
Succession of Mrs. Marjorie SPENCER, divorced wife by first marriage of Louis P. WOLFORT, II, and wife by second marriage of Erhard THUMFART.
No. 6043.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1974.
*851 Andrew M. Weir, Regis L. Kennedy, Bernard, Micholet & Cassisa, Metairie, for Louis P. Wolfort, III and Marsha L. Wolfort.
Lloyd C. Melancon, McLoughlin, Barranger, Provosty & Melancon, New Orleans, testamentary executor of the succession.
Harry P. Gamble, Jr., New Orleans, for Erhard Thumfart.
Before SAMUEL and REDMANN, JJ., and BAILES, J. Pro Tem.
REDMANN, Judge.
This appeal by the executor and children of a deceased wife inquires (1) whether a wife's property, owned by her at the time of marriage, constitutes "dowry" for purposes of the marital portion law, C.C. art. 2382;[1] (2) if not, whether a husband, earning $9,000 annually but having assets of only $2,500 at the death of his wife who left $162,000, is comparatively in "necessitous circumstances" within art. 2382; (3) if so, whether art. 2382 is unconstitutional on the ground that it unreasonably discriminates between men and women by making marital portion rights depend on only the latter's dowry, or between dowried and undowried wives by making only the latter entitled to and liable for the marital portion.
An answer to the appeal by the husband questions the time from which the periodic allowance of art. 2382 is due.
We affirm the trial judge's award of the marital portion and the interim periodic allowance. But we conclude the allowance here must include payment from the wife's death rather than only from judicial demand.

*852 Facts

Decedent was divorced from her first husband in June, 1964. On September 30, 1964 decedent wrote a will. In March, 1968 she married her second husband. Apparently she did not write another will subsequent to her second marriage. The wife died May 25, 1972.
From the community property settlement of her first marriage decedent left a net separate estate of about $162,000. The husband's assets were valued at about $2,500. However, the husband earned $9,317 in 1971, the year prior to his wife's death, and as of trial in December, 1972 his earnings had increased somewhat and he had cash on deposit of $5,000 or $6,000.

Absence of Dowry
Appellants argue that the wife's property owned at the time of marriage was dowry for purposes of art. 2382 and therefore art. 2382 by its terms is inapplicable.
We reject this notion. "[T]he law only regulates the conjugal association, in default of particular agreements * * *", C.C. art. 2325. One of the "most ordinary conventions in marriage contracts [is] the settlement of dowry", art. 2331. Dowry thus comes about exclusively by matrimonial agreement or marriage contract. The marriage contract must be by notarial act, art. 2328. Even where such a contract exists the dowry does not necessarily include all of the wife's present property: "The settlement of the dowry may include all the present and future effects of the wife, or her present effects only, or a part of her present and future effects, or even an individual object." Art. 2339.
There having been no marriage contract, this is a case where "the wife has not brought any dowry", and art. 2382 is not inapplicable. See Dunbar v. Dunbar, 1850, 5 La.Ann. 158.

Necessitous Circumstances
Appellants recognize that art. 2382's "necessitous circumstances" is a relative concept.[2] A husband with $2,500 of assets whose wife had $162,000 would be, relatively, in necessitous circumstances. But appellants argue that the husband's earnings of $9,000 yearly are ample for the continuation of the life-style he enjoyed during marriage, and therefore his earnings prevent his being deemed in necessitous circumstances. We disagree.
In Succession of Fortier, 1848, 3 La. Ann. 104, the trial judge had rejected a claim for a marital fourth of the wife's $26,000 succession, observing "The survivor is a young man, twenty six years of age, and healthy. He has no charge except his own maintenance, and has [assets of $1,100]. * * * [H]e certainly cannot be called necessitous, * * * which word would certainly apply to a woman in similar circumstances." Id. at 105. The supreme court reversed, noting the husband "has never followed any pursuit as a means of support" and the law makes no distinction between husband and wife.
"If the object of the law were only to provide for the survivor who was unable, by industrious pursuits, to support himself, and was without other adequate means of support, the opinion of the district judge would undoubtedly be correct. But the rule, under the text of our Code, which establishes a perfect reciprocity or right in this respect between the spouses, would extend also to the wife. * * * The object of the law is to provide a support out of the property of the deceased, without reference to the ability of the survivor to support himself by his industry or personal exertions alone. The only question that can arise is, as to *853 the sufficiency of the pecuniary means of the husband for his support. The evidence shows that they are inadequate; and this fact, in our opinion, entitles him to the one fourth part of the succession of his wife, who died comparatively rich, and without issue." 3 La.Ann. at 105 (emphasis added).
Fortier is followed in Succession of Newman, 1875, 27 La.Ann. 593, where a husband was allowed the fourth on a comparison of the wife's $24,000 to his three horses and a buggy. No mention of any incapacity of the husband to support himself was made.
Succession of Guillon, 1922, 150 La. 587, 91 So. 53, awarded the fourth of a $16,300 succession to a husband who quit a job paying $30 weekly a few days before his 1917 marriage to his terminally ill fiancee, and obtained a job paying $21 weekly after she died after 19 days of marriage. Without adverting to his earning capacity (which for 1917, one supposes, was adequate for self-support), the court said "There can be no doubt [he] * * * was left in necessitous circumstances * * *."
In Taylor v. Taylor, 1938, 189 La. 1084, 181 So. 543, the husband was the postmaster of a fair-sized city, earning $2500 a year when his wife died in 1934 (though he thereafter "lost his position"). Although the husband's property was only half of a $586 community, his income was quite adequate to prevent "necessitous circumstances"; yet the marital portion was allowed from the wife's $56,000 succession.
Succession of Schnitter, 1951, 220 La. 323, 56 So.2d 563, refused a marital portion to a husband earning $300 monthly; however, the husband's assets were $3,000 and the wife's only $6,200. Since the husband already had almost twice the fourth the law would allow, the circumstance of his earning $300 hardly seems to have been a decisive factor. Schnitter does not impliedly overrule Fortier.
See also Comment, The Marital Portion in Louisiana, 2 Loyola L.Rev. 58, 67 (1943), which asserts that Fortier's principle, that the survivor's ability to support himself by his personal industry is no disqualification for the marital portion, has been followed "relentlessly"[3].
We conclude that the earnings or earning capacity of a spouse are not a factor in determining whether the marital portion of C.C. art. 2382 is due from the other spouse's estate.

Constitutional Argument
The wife's children argue that art. 2382 "invidiously discriminates" against women by making their entitlement to, or liability for, the marital portion dependent on not having brought a considerable dowry into the marriage, while the rights of men (though dependent on the wife's dotlessness) are not similarly conditioned by some classification of the husband's property.
But we conclude that whether or not the wife brings considerable dowry, the surviving husband in necessitous circumstances is entitled to a marital portion if his wife died rich, and there is thus no discrimination obliging only wives who did not bring a dowry to cede the marital portion. Nor is there arbitrary discrimination against a wife, depending on whether she brought dowry. If she has brought a considerable dowry, she is refused the marital portion because her claim against her husband's estate for restitution of her dowry (see C.C. arts. 2347 and 2374, among others) makes it logically impossible for her to be left in necessitous circumstances by a rich husband. Upon the return of her comparatively *854 considerable dowry, she cannot be comparatively poor, and for that reason she will not be entitled to the marital portion, just as a woman who brought little or no dowry, but has considerable extradotal property, is not entitled because she is not comparatively poor.
The Louisiana text stating what seems grammatically to justify a restriction to low- or no-dowry cases is unchanged since its incorporation into the Digest of 1808, at p. 334, art. 55.
The source of the concept was Justinian, Novels 53.6 and 117.5, reproduced in Comment, The Marital Fourth and the Widow's Homestead, 1964, 25 La.L.Rev. 259, 266-268, n. 46. See also Comment, Codal Exceptions to the Louisiana Law of Heirship: The Marital Fourth and the Widow's Homestead, 1943, 18 Tulane L.Rev. 290; also Comment, The Marital Portion in Louisiana, 1943, 2 Loyola L.Rev. 58.
Justinian had provided in Novel 22.6 that an undowried wife divorced by a rich man should receive a fourth of his estate; but he also provided that if the wife were at fault, she should pay the fourth of her estate to the husband. Referring to that Novel, which had not provided for a faithful wife whose rich husband died (and whose estate would be inherited by the children, leaving an undowried wife "in the greatest poverty"), Novel 53.6 provided for a fourth to the widow. And "Again, everything that We have stated in the present law with reference to the fourth to which a poor woman is entitled shall equally apply to a husband, for like the former one, We make this law applicable to both."
Evidently the Louisiana redactors more closely followed Justinian than the intervening Siete Partidas, which, in 6.13.7, provided a similar marital fourth for the wife alone; see 18 Tulane L.Rev. 290, 292. The Louisiana text's use of "either husband or wife", instead of repeating for each as Justinian had done, appears to have been an editorial economy of words rather than the expression of an intent to exclude from the benefit impecunious husbands whose wives had brought a dowry.
Certainly the poverty-prevention purpose of the marital portion needs equally to be served when the wife has brought a dowry and the poor husband had, from the beginning of the marriage, enjoyed the dowry which on the wife's death he must return. He, no less than the husband whose wealthy wife brought no dowry, will also feel the loss of enjoyment of the wife's wealth.
Our interpretation is consistent with Succession of Guillon, supra, which interpreted the article as having only four requirements. None was that the wife should have brought little or no dowry (except insofar as this is necessarily implied, in the case of a wife's claim, by the stated requirement that the survivor be in necessitous circumstances).[4]
We conclude that the clause "When the wife has not brought any dowry" etc. cannot reasonably be interpreted as limiting the claim of the husband to low- or no-dowry cases.[5]
Accordingly the constitutional question does not arise.

Periodic Allowance
Art. 2382 (as amended by Acts 1926, No. 113) also provides that, pending settlement *855 of the estate, "the survivor in necessitous circumstances shall be entitled to demand and receive from the executor or administrator of such succession, a periodical allowance to be fixed by the court wherein the proceedings are pending."
We note the analogous art. 2374 provides to the wife "during the year of mourning * * * a sustenance to be taken out of the succession of her husband." Obviously the year of mourning begins at the husband's death and not on judicial demand for sustenance.
We further note that, since the marital portion is always a portion of the entire succession (whether in full property or usufruct) and therefore would include any interest earned by the portion during administration, it will not make any ultimate difference whether the allowance is paid from death or judicial demand.
Unlike art. 2374, art. 2382 does not express the time as of which its periodic allowance is to begin. It does say, "Whenever, during the administration * * *, it appears that the surviving spouse will be entitled to the marital portion * * * the survivor * * * shall be entitled to demand and receive * * *" the allowance. And it does provide that the allowance is chargeable against the marital portion's revenues. We construe the article to mean that, as soon as the comparative wealths are known during the administration, the allowance is demandable. Here it should have been immediately evident that the wife was enormously more wealthy than the husband and he was therefore entitled to "demand and receive" the allowance as of the judicial opening of the succession.
But the article poses no obstacle to providing, say within six months after the death, as here, an allowance for the brief period since the death. The survivor may have lived on credit during that period and need the allowance to discharge the resulting debts. It further appears to us that the penultimate sentence of the article, in allowing the entirety of the martial portion's interest earned since death to be consumed by the allowance, anticipates that the allowance would run from death. We construe the article, in the light of its clear purpose, to provide for a periodic allowance, demandable only after administration begins, but covering the time beginning with the spouse's death.

Decree
The judgment is modified to make the periodic allowance begin from May 24, 1972, and is otherwise affirmed.
NOTES
[1] "When the wife has not brought any dowry, or when what she brought as a dowry is inconsiderable with respect to the condition of the husband, if either the husband or the wife die rich, leaving the survivor in necessitous circumstances, the latter has a right to take out of the succession of the deceased what is called the marital portion; that is, the fourth of the succession in full property, if there be no children, and the same portion, in usufruct only, when there are but three or a smaller number of children; and if there be more than three children, the surviving, whether husband or wife, shall receive only a child's share in usufruct, and he is bound to include in this portion what has been left to him as a legacy by the husband or wife, who died first.

"Whenever, during the administration of any succession, it appears that the surviving spouse will be entitled to the marital portion above provided for, upon final liquidation of the estate of the deceased, the survivor in necessitous circumstances shall be entitled to demand and receive from the executor or administrator of such succession, a periodical allowance to be fixed by the court wherein the proceedings are pending. Such allowance shall be based upon the apparent amount of the marital portion invested at five per cent. per annum interest. And should the marital portion, as finally fixed, not yield the revenue equal to the allowance as fixed by the court, the surviving spouse shall be charged with, and there shall be deducted from the marital portion, the amount of such deficiency. The provisions of this article shall apply to successions pending and unsettled, as well as those hereafter opened."
[2] E. g., a wife with $25,000 is in "necessitous circumstances", Succession of Henry, La.App.1973, 287 So.2d 214, when her husband's net estate is $500,000.
[3] For purposes of the somewhat analogous benefit of an allowance of up to $1,000 to a widow in "necessitous circumstances" under C.C. art. 3252, the widow's earning capacity has similarly been held not to defeat her entitlement; Succession of Kuntz, La.App. 1938, 179 So. 623; Succession of Hawk, 1928, 9 La.App. 211, 120 So. 93.
[4] See also Dunbar v. Dunbar, 1850, 5 La.Ann. 158, 159, rejecting an argument that the marital fourth was only applicable when there was a marriage contract. "The fact that this article is found in the chapter of the code that treats of the dowry, would not by itself authorise a construction at variance with its plain import * * *. It is well known that during the discussions on the code many articles were inserted, and amendments made, without regard to its classification."
[5] Although largely duplicative of the "necessitous circumstances" requirement for a wife's claim, the clause did broaden the wife's right to include the case, not expressly stated by Justinian, of the comparatively small dowry. The clause also affords a clear textual basis for the comparative evaluation of the spouses' estates.